UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Anthony Richardson, Jr. | § | CIVIL ACTION NO: 2:14-cv-01712-SM-SS |
| *Plaintiff*, | § § | |
| | § | SECTION "E"(1) |
| v. | § § | |
| SEACOR Liftboats, LLC | § § | |
| *Defendant*. | § | |

# Plaintiff's Trial Memorandum

Plaintiff Anthony Richardson respectfully submits his trial memorandum as folows

**A.    Background on the legal standards that govern this case.**

General principles of negligence guide the analysis of a maritime tort case. *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir.1980). To prove negligence under general maritime law, a plaintiff "must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff and a causal connection between defendant's conduct and plaintiff's injury." *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir.), *cert. denied,* 112 S.Ct. 190 (1991).  Under general maritime law, a defendant owes a plaintiff a duty of ordinary care.  *Casaceli v. Martech Int'l, Inc.*, 774 F.2d 1322, 1328-29 (5th Cir.1985); *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959) ("It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.").  In order to prove causation, the plaintiff must show that the defendant's negligence

was a "substantial factor" in causing the plaintiff's injuries. *Lowry v. Overseas Bulk Tank Corp.*, 62 F.3d 397 (5th Cir. 1995).

**B.     This is a case of clear liability where the Plaintiff's version of events is confirmed by several independent fact witnesses.**

Plaintiff Anthony Richardson was being transferred via personnel basket from Defendant's lift boat to a crew boat. Defendant's crane operator lowered the personnel basket down to the deck of the crew boat at an unsafe speed. After slamming the basket on the deck, he then jerked the personnel basket back into the air. Richardson's foot got caught in the netting of the personnel basket when this occurred – causing Richardson to do the "splits."

Richardson is not the only witness who tells this version of events. The other two workers[1] on the personnel basket confirm Richardson's testimony. The deckhand[2] on the crew boat (who was assigned to help the workers get off the personnel basket) confirms Richardson's testimony as well. These three witnesses are completely independent. They worked for three separate companies, did not know each other beforehand, are not friends with Richardson, and have nothing to gain by providing favorable testimony on his behalf. The version of events that these four witnesses tell is clear negligence.

Seacor's story, however, is that its crane operator lowered the basket at a safe and gentle speed, but Richardson and the two other workers on the basket all simultaneously jumped off the basket while it was several feet above the deck of the crew boat. To believe this story, the Court must necessarily believe that the three independent fact witnesses are

---

[1] Carolos Herbert and Randy Rodriguez
[2] Edward Caranza

2

lying.  Seacor offers no explanation for why these witnesses would make up a story.  Nor does Seacor offer any explanation for why three separate people would decide to jump off a moving personnel basket that was being safely and gently lowered to the deck of the boat. Seacor's story makes little sense and is refuted by the four people most directly involved in the incident (i.e. Caranza, Herbert, Rodriguez, and Richardson). The Court should find Seacor 100% responsible for the incident.

**C.    Richardson was sustained serious and long-term injuries in the incident.**

Richardson reported he was injured in the incident while still on the crew boat. However, he decided against seeking immediate medical attention in hopes that his pain would go away and the injury would prove to be a minor one.  This was not the case, though. The pain continued and Richardson visited a chiropractor approximately two weeks later. He was given therapy and ordered not to lift anything over 10 pounds until further notice. He then underwent an MRI approximately one month after the incident.  The MRI revealed bulging discs and facet arthropathy in his spine.

Richardson was then referred to an orthopedic specialist named Dr. Sledge.  Dr. Sledge placed physical restrictions on Richardson as well.  His restrictions included: (1) no work; (2) no frequent lifting over 10 pounds; (3) no pushing and pulling over 25 pounds; (4) no repetitive lifting; and (5) no repetitive bending and twisting.  Dr. Sledge also indicated, that even if his treatment plan for Richardson was successful, Richardson would be permanently precluded from returning to his prior offshore job.  Richardson then underwent a series of injections to treat his injuries.  He was also referred to a pain management doctor named Dr. Steven Staires.  Dr. Staires concurred with Dr. Sledge on all pertinent issues.

3

Dr. Sledge and Dr. Staires both indicated that Richardson should undergo further diagnostic testing (i.e. a discogram) to determine whether surgery would be an appropriate method to treat Richardson's injuries. Unfortunately, Richardson's employer would not approve further treatment.[3] Consequently, Dr. Sledge continued to treat Richardson with conservative measures such as physical therapy and medication. Richardson was then referred to another orthopedic specialist named Dr. Paul Fenn. Dr. Fenn's treatment largely follows the same course of treatment that Dr. Sledge followed.

Since the incident, Richardson has had good days and bad days. On "bad days," he experiences substantial pain and cannot do much of anything. On "good days," he is in less pain and can be more active. But the symptoms soon return. Seacor, though, points to isolated physical therapy notes where Richardson reports he is "pain free" at that snapshot in time and performing various physical activities. But the treatment notes from those same dates also reveal that Richardson still has lower back pain, limited range of motion, and an Oswestry score that indicates 24% disability. The type of "waxing and waning" that is reflected in these records is normal for the kind of injuries he sustained.

Further, given the fact that the incident occurred more than two years ago, this pattern is expected to be permanent. This will prevent Richardson from ever returning to his prior job offshore (or any other job that requires sustained physical labor). This is no small matter. Richardson was only 31 years old when he was injured. Prior to the incident, he had a steady job and an earning capacity in excess of $56,000/year. But he has been precluded by his doctors from returning to that type of work. Richardson wants to return to some form of

---

[3] It is believed that Seacor is being defended and indemnified by Richardson's employer in this case.

work.  Yet, he needs to find a new career that he is physically capable of performing for the remainder of his life.  His prospects of finding such work that pays anywhere near $56,000/year are bleak.  If the Court assumes Richardson can find steady work that pays $25,000, he will still have suffered approximately $1,000,000 in loss of earning capacity over the course of his work-life.

Moreover, his injuries will require long-term treatment in the form of follow up injections, periodic physical therapy, medication, diagnostic testing, etc.  In the last two years alone, he has incurred approximate $40,000 in medical expenses.  Over the remainder of his life, he is expected to incur another $100,000 to treat his injuries.  In short, Seacor's negligence caused a substantial loss to Richardson.  Richardson should be fairly compensated for his losses.

## Conclusion

The Court should: (1) find Seacor's negligence proximately caused Richardson's injuries; (2) find Seacor was 100% responsible for the incident; and (3) award Richardson fair compensation for his loss of earning capacity, medical expenses, general damages, prejudgment interest, post-judgment interest, and costs of court.

Respectfully submitted,

ARNOLD & ITKIN LLP

*/s/ Noah M. Wexler*_____
Noah M. Wexler
LA State Bar No. 34995
Cory D. Itkin (Pro Hac Vice)
Texas State Bar No. 24050808
Kelly M. Woods (Pro Hac Vice)
Texas State Bar No. 24088676
ARNOLD & ITKIN LLP
6009 Memorial Drive
Houston, Texas  77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on June 8, 2015, a true and correct copy of this motion was served on all counsel of record by uploading the same to the Court's CM/ECF System.

*/s/ Noah M. Wexler*_____
Noah M. Wexler

6